pay for the services individually. The jury believed that such promise was made, but the plaintiff "took it for granted," and Mr. Ferguson, who had charge of the work, stated that it was not rendered for the defendant individually. It appears that there had been services previously rendered by Mr. Ferguson for the defendant and for his companies, and the natural inference is that he so understood the new work. He did, however, enter items against defendant individually, and assigned his interests in the claims as if they were only against defendant. Concluding, as we may, that Ferguson is an interested witness, hostile to plaintiff, and testifying in conflict with his assignment and entries in the books, yet there is no sufficient evidence to sustain the burden placed on plaintiff, of proving that defendant agreed personally to be responsible for the debts of the companies with which he was connected. Mr. Higley himself had little or nothing to do with defendant, who was a client of Ferguson's; and he does not claim that before the services were rendered he made any agreement, or was present when such was made, by which defendant agreed to pay for services rendered to the companies. After the rendition of the services he had several talks with defendant, in which the latter agreed to pay the claims. If not primarily liable, he could not be bound by an oral promise made after the debt was incurred. The question therefore returns to the one discussed, as to whether there was sufficient evidence to go to the jury on the proposition which plaintiff had to sustain, viz. that defendant, desirous of having services rendered to the company, personally agreed to pay for same. We think not, for, though plaintiff was led, as he says, by Ferguson's statements to believe such to be the case, such statements, representations, or entries from books made by Ferguson were not binding on defendant. We think, therefore, that the learned judge should have dismissed the second and fourth causes of action, and directed a verdict on the first and third causes of action. If the plaintiff will consent to reduce the judgment to the amount of $150, with interest thereon, together with the costs in the court below, including an allowance, then the judgment may be modified accordingly, without costs to either party on this appeal. Upon a refusal, however, to consent to a reduction, the judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.

---

### In re KENT.

(Supreme Court, Special Term, Dutchess County. October, 1897.)

VILLAGE BOARD OF HEALTH—POWERS—APPOINTMENT OF SANITARY INSPECTOR.

A village board of health is empowered by Laws 1893, c. 661, to appoint a health officer and fix his compensation, and to perform its other duties by orders, by the imposition of penalties, and the employment of competent persons to carry its orders into effect. Its power over sewers is recommendatory, merely, to the village trustees, and its expenses have to be audited and paid as other village charges. *Held*, that it was unauthorized to appoint a sanitary inspector and fix his compensation.

Application, on the relation of Edward Henry Kent, for a peremptory writ of mandamus to the board of trustees of the village of North Tarrytown. Motion denied.

Clarence S. Davison, for the motion.

Henry C. Griffin, opposed.

BARNARD, J. The relator was employed by the local board of health of North Tarrytown. He made application for his appointment as sanitary inspector, and was appointed, and he did services for the board, the compensation for which was fixed by the board at the sum of $250. This bill was presented to the trustees of the village of North Tarrytown, and audit was refused. The board of health has no power to make the appointment or to fix the compensation of the relator. The boards of health in villages have power of appointment of a health officer, under chapter 661 of the Laws of 1893 (section 20), and to fix his compensation (section 21). The other duties of the health boards are to be done by orders, by the imposition of penalties, and by the employment of competent persons to carry the orders into effect. The power over sewers was one only of recommendation to the trustees of the village, and the expenses of these local boards of health have to be audited, levied, collected, and paid as other village charges. Sections 29, 30.

The motion should be denied, but, as the relator performed valuable services, no costs are allowed upon this motion.

=====

BEYER v. CONSOLIDATED GAS CO.

(Supreme Court, Appellate Division, First Department. November 10, 1899.)

1. GAS COMPANY—NEGLIGENCE—QUESTION FOR JURY.

In an action against a gas company to recover for personal injuries, the evidence disclosed that plaintiff lighted a gas radiator, and then laid down on a couch in the room therewith, and went to sleep; that, while she was asleep, defendant's employés, for the purpose of improving the gas pressure, turned off the gas in the building, drew off water which had accumulated in the pipes, and turned on the gas again; that it was usual for defendant to warn tenants of any intention to obstruct the flow of gas. The evidence was conflicting as to what steps defendant's employés took to warn plaintiff, there being testimony that they knocked on the door, but not sufficiently loud to arouse her. *Held*, that the question of whether defendant's employés used such care as was incumbent on them under the circumstances was for the jury.

2. CONTRIBUTORY NEGLIGENCE.

Under such conditions there was no question of contributory negligence.

3. TRIAL—WITNESSES—INTEREST—HARMLESS ERROR.

In an action by a woman to recover for injuries sustained by reason of defendant's negligence, it is harmless error to exclude, on cross-examination of plaintiff's husband, a question tending to show his interest in the case, as such fact is presumed by reason of his relation.

4. WITNESS—IMPEACHMENT.

Parol evidence of the contents of a complaint made by a witness in another action is incompetent to impeach his testimony.